## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MURIEL'S NEW ORLEANS, LLC**                    **CIVIL ACTION**

**VERSUS**                                       **NO. 20-2295**

**STATE FARM FIRE AND**                          **SECTION: "G"(5)**
**CASUALTY COMPANY**

### ORDER AND REASONS

This litigation arises from a denial of insurance coverage for damages allegedly arising from the COVID-19 pandemic. Pending before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") "Rule 12(b)(6) Motion to Dismiss Plaintiff's Petition for Failure to State a Claim."[1] Plaintiff Muriel's New Orleans, LLC ("Muriel's") opposes the motion.[2] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion and grants Plaintiff leave to amend the deficiencies identified in this Order.

### I. Background

*A.*     *Factual Background*

In this litigation, Muriel's alleges that it entered into an "all-risk" insurance contract with State Farm to cover losses at its restaurant, Muriel's Jackson Square, in New Orleans, Louisiana (the "Policy").[3] According to Muriel's, the Policy was in "full effect, providing property, business

---

[1] Rec. Doc. 12.

[2] Rec. Doc. 27.

[3] Rec. Doc. 1-1 at 2–3.

personal property, business income, and extra expense, and additional coverages for the insured premises between the period of June 19, 2019 through June 19, 2020."[4] During this time, Muriel's allegedly "faithfully paid policy premiums" to State Farm.[5] Muriel's alleges that under the Policy, insurance coverage extends to "the actual loss of business income sustained and necessary extra expenses incurred when access to the insured premises is specifically prohibited by order of civil authority" (the "Civil Authority" provision).[6]

In March and April 2020, in response to the COVID-19 pandemic, Louisiana Governor John Bel Edwards and New Orleans Mayor LaToya Cantrell issued a series of orders and emergency proclamations restricting public gatherings and limiting restaurant operations (the "Closure Orders").[7] Muriel's alleges that it sustained a "massive and detrimental hit to its business income"  and lost the "functionality and use of its physical property" as a result of the Closure Orders.[8] Muriel's avers that "this loss of use is damage as required to trigger insurance coverage for 'physical damage' under the Policy."[9] Muriel's also claims that its alleged losses are covered under the Policy's Civil Authority provision.[10]

Muriel's alleges that State Farm nevertheless denied coverage, claiming that Muriel's: (1) had not suffered physical loss or damage, and (2) was precluded from coverage due to the "virus

---

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 10–20.

[8] *Id.* at 4–5.

[9] *Id.* at 5.

[10] *Id.* at 5, 8.

exclusion" in the Policy.[11] Muriel's asserts that State Farm's denial of coverage represents a breach of contract resulting in "significant damages."[12] In addition to damages, Muriel's seeks a judicial declaration as to its rights and State Farm's obligations under the Policy.[13]

**B.    *Procedural Background***

On June 22, 2020, Muriel's filed a petition in the Civil District Court for the Parish of Orleans, State of Louisiana.[14] State Farm removed the case to this Court on August 19, 2020, asserting diversity jurisdiction pursuant to Title 28, United States Code, Section 1332.[15] On September 11, 2020, Muriel's filed a motion to remand the case to state court.[16] The Court denied the motion to remand on November 18, 2020.[17]

On September 16, 2020, State Farm filed the instant motion to dismiss.[18] Muriel's filed an opposition to the instant motion on November 10, 2020.[19] On November 20, 2020, with leave of Court, State Farm filed a reply brief in further support of the motion to dismiss.[20] On December 18, 2020, with leave of Court, both parties filed notices of supplemental authority regarding the

---

[11] *Id.* at 5 (internal quotations omitted).

[12] *Id.* at 7.

[13] *Id.* at 8.

[14] Rec. Doc. 1-1.

[15] Rec. Doc. 1.

[16] Rec. Doc. 9.

[17] Rec. Doc. 30.

[18] Rec. Doc. 12.

[19] Rec. Doc. 27.

[20] Rec. Doc. 32.

instant motion to dismiss.[21] On January 12, 2021, with leave of Court, State Farm filed a response to Muriel's notice of supplemental authority in opposition to the motion to dismiss.[22] On January 26, 2021, with leave of Court, Muriel's filed a second notice of supplemental authority in opposition to the instant motion.[23] With leave of Court, State Farm filed a response to Muriel's second notice of supplemental authority in opposition to the instant motion on February 3, 2021.[24]

## II. Parties' Arguments

### A. State Farm's Arguments in Support of the Motion to Dismiss

State Farm moves the Court to dismiss Muriel's breach of contract and declaratory judgment claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court summarizes State Farm's arguments with respect to each claim.

#### 1. State Farm asserts that Muriel's breach of contract claim should be dismissed

State Farm argues that Muriel's breach of contract claim should be dismissed because "there is no coverage for [Muriel's] alleged losses".[25] First, State Farm argues that the Policy's "Virus Exclusion" provision bars Muriel's breach of contract claim.[26] State Farm asserts that the "unambiguous" Virus Exclusion provision serves to bar Muriel's claim because the Policy provides coverage for "accidental direct physical loss[es]" that are "not excluded" by the Policy's exclusions, including the specified Virus Exclusion provision.[27]

---

[21] Rec. Doc. 38; Rec. Doc. 40.

[22] Rec. Doc. 44.

[23] Rec. Doc. 52.

[24] Rec. Doc. 58.

[25] Rec. Doc. 12-2 at 11.

[26] *Id.* at 11–18.

[27] *Id.* at 12.

State Farm contends that "Louisiana courts have repeatedly given effect to comparable policy exclusions barring coverage for bacteria and microorganisms."[28] State Farm points to the Petition in this case to support its assertion that a virus is in the "chain of causation" for Muriel's alleged losses.[29] State Farm argues that "the COVID-19 virus is plainly at the root of the government orders at issue."[30] State Farm asserts that under the terms of the Policy, the alleged losses sustained by Muriel's are not covered regardless of other perils that may have contributed "concurrently or in any sequence" to the loss.[31] State Farm also argues that there is no basis for "carving out an exception to the Virus Exclusion for losses resulting from a virus because the virus has reached pandemic status."[32] State Farm notes that the Virus Exclusion does not require the "actual presence of the virus at the insured premises for the exclusion to apply."[33]

Second, State Farm argues that even in the absence of the Virus Exclusion provision, Muriel's does not allege losses covered by the Policy.[34] Specifically, State Farm contends that Muriel's allegations are "insufficient to establish the required 'accidental direct physical loss to' Covered Property" as required by the Policy.[35] In support, State Farm points to Fifth Circuit caselaw interpreting the meaning of "physical loss or damage" to "exclude alleged losses that are

---

[28] *Id.* at 12–13.

[29] *Id.* at 13.

[30] *Id.* State Farm also contends that the virus is a but-for cause of Muriel's alleged losses. *Id.* at 14.

[31] *Id.*

[32] *Id.* at 16.

[33] *Id.*

[34] *Id.* at 18–24.

[35] *Id.* at 18.

intangible or incorporeal."[36] State Farm contends that Muriel's fails to allege direct physical losses because Muriel's does not claim that "the COVID-19 virus has ever been present on its property" and Muriel's seeks recovery only for "financial damage due to the lost functionality and use of the restaurant."[37] State Farm further contends that Muriel's alleged loss of use of its property due to the Closure Orders does not constitute a covered loss under the Policy because the Policy covers direct physical loss "to" property, not direct physical loss "of" property.[38]

Third, State Farm argues that the Civil Authority provision in the Policy's Endorsement is inapplicable to this case.[39] According to State Farm, the Civil Authority provision "provides coverage for loss of income caused where damage to other property caused by a covered risk causes a civil authority to prohibit access to the insured property, causing loss of income to the insured."[40] State Farm contends that Muriel's does not allege facts to support the applicability of the Civil Authority provision.[41] Specifically, State Farm avers that Muriel's "does not allege damage to a nearby property" and fails to "plead a prohibition on access to its property" as required by the Civil Authority provision.[42] In addition, State Farm claims that Muriel's "fails to plead the requisite causal link between actual damage to nearby premises and the prohibition on access."[43] State Farm further contends that the Civil Authority coverage is circumscribed by the

---

[36] *Id.* at 19 (citing *Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006)).

[37] *Id.* at 20 (internal quotation omitted).

[38] *Id.* at 23–24.

[39] *Id.* at 24.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 25.

[43] *Id.* at 26.

6

Policy's Virus Exclusion provision.[44]

Fourth, State Farm argues that the "Loss of Income" and "Extra Expense" provisions set forth in the Endorsement to the Policy do not provide coverage in this case.[45] State Farm contends that like the Civil Authority provision, the Loss of Income and Extra Expense provisions are limited by the Virus Exclusion provision.[46] Additionally, State Farm asserts that Loss of Income and Extra Expense coverage applies only to losses sustained due to the necessary suspension of operations during a "period of restoration."[47] State Farm argues that such coverage is inapplicable here because "[t]here are no allegations that the coronavirus necessitated repairs, replacement, or rebuilding, or that new permanent locations are being sought."[48]

Fifth, State Farm argues that three additional policy exclusions bar Muriel's claims: (1) the "Ordinance or Law" provision bars coverage for any losses due to the "enforcement of any ordinance or law;" (2) the "Acts or Decisions" provision bars coverage for any losses caused by "conduct, acts or decisions . . . of any person, group, organization, or governmental authority;" and (3) the "Consequential Loss" provision bars coverage for any losses caused by "delay, loss of use or loss of market."[49]

## 2.    State Farm argues that Muriel's declaratory judgment claim should be dismissed

State Farm argues that Muriel's claim for a judicial declaration as to its rights and State

---

[44] *Id.* at 25.

[45] *Id.* at 27–28.

[46] *Id.* at 27.

[47] *Id.* at 28.

[48] *Id.*

[49] *Id.* at 28–30 (internal quotations omitted).

Farm's obligations under the Policy should be dismissed.[50] State Farm contends that the declaratory judgment claim should be dismissed for the same reasons as the breach of contract claim, namely that "there is no coverage for the claimed losses."[51] State Farm asserts that the declaratory judgment action claim in this case is redundant and should be dismissed on the same grounds as the breach of contract claim.[52]

**B.**  ***Muriel's Arguments in Opposition to the Motion to Dismiss***

Muriel's offers several overlapping arguments in opposition to the motion to dismiss.[53] First, Muriel's notes that the *Twombly* pleading standard "requires plausibility, not success on the merits before discovery."[54]

Second, Muriel's contends that its claims are not barred by the "Ordinance or Law" provision of the Policy.[55] Muriel's argues that the COVID-19 emergency order issued by Mayor Cantrell represents "an action or decision by a governmental authority that results in direct physical loss," not an "ordinance" or "law" of the City of New Orleans.[56] Muriel's argues that the Proclamation of Governor Edwards similarly is not an "ordinance" or "law."[57]

Third, Muriel's contends that the Policy issued by State Farm covers "losses" rather than

---

[50] *Id.* at 30.

[51] *Id.*

[52] *Id.* at 31.

[53] Rec. Doc. 27.

[54] *Id.* at 9.

[55] *Id.* at 10.

[56] *Id.*

[57] *Id.*

"damages," and that this distinction is significant.[58] Specifically, Muriel's asserts that the Louisiana Supreme Court "has not spoken" on the definition of "direct physical loss" as compared to "physical damage."[59] Muriel's argues that pursuant to the McCarran-Ferguson Act, 15 U.S.C. § 1012, the Louisiana Supreme Court "should be charged with the interpretation of critical insurance terms regulated by the Louisiana Department of Insurance."[60] In support of its assertion that "loss" is meaningfully distinct from "damage," Muriel's points to decisions issued by the Louisiana First Circuit Court of Appeal and a federal district court in the Western District of Missouri.[61] Muriel's asserts that it suffered "loss of use" because "[t]he insured property was uninhabitable by Muriel's customers because the City and State decided it was unsafe."[62]

Fourth, Muriel's argues that the Virus Exclusion is a "pollution/contamination" exclusion and the COVID-19 pandemic does not satisfy the applicable "pollutant test" under Louisiana law.[63] Muriel's asserts that "[a] virus is a thing. It is a contaminant, a pollutant with both a physical form and physical mass."[64] Muriel's contends that a pandemic, by contrast, is an event "like civil unrest, terrorism, or war."[65] Muriel's avers that "State Farm clearly excludes damages from civil unrest, terrorism, and war" but does not exclude damages resulting from "pandemic,

---

[58] *Id.* at 11–15.

[59] *Id.* at 12.

[60] *Id.* at 12–13.

[61] *Id.* at 13–15 (citing *Mangerchine v. Reaves*, 63 So. 3d 1049, 1056 (La. App. 1 Cir. 3/25/11); *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *8 (W.D. Mo. Aug. 12, 2020)).

[62] *Id.* at 16.

[63] *Id.* at 17–18; 25–26.

[64] *Id.* at 21.

[65] *Id.*

epidemics, or other societal transmission of communicable disease despite having ready access to boilerplate language used throughout the insurance industry."[66]

Fifth, Muriel's argues that State Farm inappropriately relies on "parol evidence and policy arguments" to clarify the contracting parties' intent because the contract at issue here is "clear and unambiguous."[67] Muriel's asserts that the contract clearly "excludes viral contamination, which State Farm admits is not alleged in this case, and does not exclude Pandemic Events or Communicable Disease events."[68] Muriel's contends that "[i]f parol evidence is to be considered, discovery is necessary to provide balance to State Farm's unilateral view," and that "if parol evidence is to be considered then the contract is ambiguous and should be interpreted against State Farm and in favor of coverage."[69]

Sixth, Muriel's contends that State Farm should be "equitably estopped from obtaining a policy 'clarification' [] regarding contamination events at the property and then applying that small change as if a Pandemic Event or Communicable Disease Exclusion had been approved and amended to the policy."[70] In making this argument, Muriel's suggests that State Farm's decision not to include "Pandemic Events" and "Communicable Disease" exclusions was "bad faith contracting" in order to avoid implementing a premium reduction across State Farm's policies.[71] Muriel's appears to argue that State Farm should therefore be estopped from arguing

---

[66] *Id.* at 20–25.

[67] *Id.* at 19.

[68] *Id.* at 19–20 (internal citation omitted).

[69] *Id.* at 20. Muriel's also claims that State Farm hid its "true intent" from Muriel's by adding the word "virus" to the list of policy exclusions instead of including a "Pandemic Event Exclusion" in the wake of the 2002 – 2003 SARS outbreak. *Id.* at 21.

[70] *Id.* at 27.

[71] *Id.* at 28.

that the Virus Exclusion extends to pandemics.[72]

## C.      *State Farm's Arguments in Further Support of the Motion to Dismiss*

In reply, State Farm first reiterates that coverage for Muriel's alleged losses is barred by the Virus Exclusion provision in the Policy.[73] State Farm responds to Muriel's argument that the absence of a pandemic exclusion renders the Policy applicable by arguing that "[t]here is no basis in the Policy language or the law for carving an exception to the Virus Exclusion for losses resulting from a virus because the virus has reached pandemic status."[74] State Farm also asserts that the Pollution Exclusion is distinct from, and does not limit the application of, the Virus Exclusion.[75] Moreover, State Farm contends that the Virus Exclusion provision "does not say anything about contamination" and does not require the actual presence of the virus on the insured property to exclude coverage.[76]

Second, State Farm reasserts that even absent the Virus Exclusion provision, Muriel's does not allege covered losses.[77] State Farm submits that Muriel's "erroneously contends that no tangible damage to property is necessary to establish direct physical loss."[78] State Farm also reiterates that physical loss "to" property and physical loss "of" property carry distinct meanings.[79]

---

[72] *Id.* at 26–28. Muriel's also filed two notices of supplemental authority. Rec. Docs. 40, 52.

[73] Rec. Doc. 32 at 7–11.

[74] *Id.* at 9.

[75] *Id.* at 10.

[76] *Id.* at 10–11.

[77] *Id.* at 11–15.

[78] *Id.* at 12.

[79] *Id.*

In addition, State Farm points out that the Closure Orders required Muriel's to limit its operations and did not require Muriel's to close or forbid access to its restaurant.[80] State Farm also notes that Muriel's admits that at the time it filed the Petition it was permitted to operate at 50% capacity.[81] Therefore, State Farm argues that the Closure Orders did not render Muriel's property "uninhabitable."[82]

Finally, State Farm argues that the Policy identifies "loss of use" as a "consequential loss," and excludes it under all coverages.[83] For the foregoing reasons, State Farm contends that Muriel's claims should be dismissed.[84]

### III. Legal Standards

#### A.    *Legal Standard for Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[85] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[86] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[87] "Factual allegations must be enough to raise a right to relief above the

---

[80] *Id.* at 13.

[81] *Id.* at 14.

[82] *Id.* at 13.

[83] *Id.* at 15.

[84] *Id.* State Farm also filed two notices of supplemental authority. Rec. Docs. 38, 62.

[85] Fed. R. Civ. P. 12(b)(6).

[86] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[87] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

speculative level."[88] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[89]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[90] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[91] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[92] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[93]

The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[94] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[95] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted

---

[88] *Twombly*, 550 U.S. at 556.

[89] *Id.* at 570.

[90] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[91] *Iqbal*, 556 U.S. at 677–78.

[92] *Id.* at 679.

[93] *Id.* at 678.

[94] *Id.*

[95] *Id.*

claims.[96] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[97]

## B.      Legal Standard for Interpreting Insurance Contracts Under Louisiana Law

Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[98] "The Louisiana Civil Code provides that '[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract' by construing words and phrases 'using their plain, ordinary and generally prevailing meaning.'"[99] "Interpretation of an insurance contract generally involves a question of law."[100]

If the contract is clear and unambiguous and does not have absurd consequences, the court applies the ordinary meaning of the contractual language.[101] If the insurance policy contains ambiguous provisions, the "[a]mbiguity . . . must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy

---

[96] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[97] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[98] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)); *Mark v. Sunshine Plaza, Inc.*, No. 16-455, 2016 WL 6876645, at *2 (E.D. La. Nov. 22, 2016) (Morgan, J.) (quoting *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) (quoting *Mayo v. State farm Mut. Auto. Ins. Co.*, 2003-1801, at 3 (La. 2/25/04); 869 So.2d 96, 99)) (quotation marks omitted) (alterations omitted).

[99] *Wisznia Co.*, 759 F.3d at 448–49 (quoting *Mayo,* 2003–1801, at 3 (La.2/25/04); 869 So.2d at 99 (citing La. Civ. Code arts. 2045, 2047)).

[100] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (citing *Bonin v. Westport Ins. Corp.*, 930 So.2d 906, 910 (La. 2006)).

[101] *Prejean v. Guillory*, 2010-0740, at 6 (La. 7/2/10), 38 So. 3d 274, 279; *see also Sapp v. Wood Grp. PSN, Inc.*, No. 15-3, 2016 WL 6995897, at *4 (E.D. La. Nov. 30, 2016) (Brown, J.).

14

provisions."[102] "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."[103] "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."[104]

## IV. Analysis

In the Petition, Muriel's asserts breach of contract and declaratory judgment claims against State Farm.[105] Specifically, Muriel's alleges that State Farm breached its insurance contract with Muriel's by denying coverage for losses Muriel's sustained as a result of the COVID-19 Closure Orders.[106] In the instant motion, State Farm argues that Muriel's breach of contract and declaratory judgment claims should be dismissed for three reasons: (1) Muriel's does not allege direct physical loss to the covered property as required by the Policy; (2) the Policy's Virus Exclusion bars coverage for the alleged losses; and (3) the Civil Authority provision of the Endorsement to the Policy does not apply to Muriel's alleged losses.[107] The Court addresses each issue in turn. In its analysis, the Court applies Louisiana law as required by *Erie/Klaxon* doctrine.[108]

---

[102] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 207 (quoting *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994)).

[103] *Id.* at 208 (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)).

[104] *Id.*

[105] Rec. Doc. 1-1.

[106] *Id.*

[107] *See generally* Rec. Doc. 12-2.

[108] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Sorrels Steel Co. v. Great Sw. Corp.*, 906 F.2d 158, 167 (5th Cir 1990) ("A federal court sitting in diversity follows the choice of law rules of the state in which it sits."). "Under the Louisiana choice-of-law regime, the law of the state where the

*A.*      ***Whether Muriel's has Alleged Direct Physical Loss to the Covered Property***

Muriel's alleges that the Closure Orders and their effects on Muriel's business, property, and operations constitute a "direct physical loss" under the terms of the Policy.[109] In the instant motion to dismiss, State Farm argues that Muriel's allegations are "insufficient to establish the required 'accidental direct physical loss to' Covered Property."[110] In opposition, Muriel's argues that the alleged losses are covered by the Policy because the Policy covers "losses" as opposed to "damages."[111]

The Policy states, in pertinent part:

We insure for accidental **direct physical loss to** Covered Property unless the loss is:
1. Excluded in SECTION I — EXCLUSIONS; or
2. Limited in the Property Subject To Limitations provision.[112]

The Policy does not define "direct physical loss." State Farm argues that direct physical loss requires tangible damage.[113] In opposition, Muriel's urges a broader interpretation of physical loss that encompasses loss of use or access to the covered property.[114]

In *Trinity Industries, Inc. v. Insurance Co. of North America*, the Fifth Circuit, applying Louisiana law, found that "the language 'physical loss or damage' strongly implies that there was

---

insurance contract was issued and executed generally governs the interpretation of that contract." *Woodfield v. Bowman,* 193 F.3d 354, 360 (5th Cir.1999). Here, the Policy was issued and executed in Louisiana. Rec. Doc. 12-3 at 93. In addition, the parties agree that Louisiana law governs the instant dispute. Rec. Doc. 12-2 at 4; Rec. Doc. 27 at 11.

[109] Rec. Doc. 1-1 at 4.

[110] Rec. Doc. 12-2 at 18.

[111] Rec. Doc. 27 at 11–15.

[112] Rec. Doc. 12-3 at 6 (emphasis added).

[113] Rec. Doc. 12-2 at 18–24.

[114] Rec. Doc. 27 at 12–15.

an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper."[115] Similarly, in *Hartford Insurance Co. of Midwest v. Mississippi Valley Gas Co.*, the Fifth Circuit found that "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."[116]

In this case, Muriel's does not allege any physical loss that manifested as a demonstrable physical alteration of the premises.[117] Instead, Muriel's relies on *Studio 417, Inc. v. The Cincinnati Insurance Co.* to argue that "direct physical loss" does not require physical tangible alteration.[118] In *Studio 417*, a district judge in the Western District of Missouri found that the plaintiffs adequately alleged a "direct physical loss" under their insurance policy due to "the presence of COVID-19 on premises."[119]

Of course, the *Studio 417* decision is not binding upon this Court. Nevertheless, *Studio 417* is easily distinguished from this case for two reasons. First, in *Studio 417*, the insurance policy at issue provided coverage for "accidental physical loss *or* accidental physical damage."[120]

---

[115] 916 F.2d 267, 270–71 (5th Cir. 1990).

[116] 181 F. App'x 465, 470 (5th Cir. 2006) (quoting 10A Couch on Ins. § 148:46) (applying Mississippi law); *see also Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) ("It appears that within our Circuit, the loss needs to have been a distinct, demonstrable physical alteration of the property.") (internal quotation omitted).

[117] *See* Rec. Doc. 1-1.

[118] Rec. Doc. 27 at 13–14.

[119] No. 20-CV-03127-SRB, 2020 WL 4692385, at *4 (W.D. Mo. Aug. 12, 2020).

[120] *Id.* at *5 (emphasis in original).

The *Studio 417* court applied the statutory interpretation canon against superfluity to give distinct meanings to "physical loss" and "physical damage."[121] Here, the Policy provides coverage only for "physical loss," thereby rendering the statutory canon against superfluity inapplicable.[122]

Second, in *Studio 417*, the plaintiffs alleged that "COVID-19 is a physical substance" that "attached to and deprived Plaintiffs of their property."[123] The court relied on this allegation to find that the plaintiffs alleged "a causal relationship between COVID-19 and their alleged losses."[124] By contrast, Muriel's does not allege that COVID-19 physically infiltrated the premises; rather, Muriel's alleges that "[t]he shutdown orders issued by the City of New Orleans and State of Louisiana, and their effects on [Muriel's] business, property, and operations constitute a direct physical loss to covered property."[125] For these reasons, the Court finds the reasoning in *Studio 417* inapplicable here.

Alternatively, Muriel's argues that it sufficiently alleges direct physical loss because "[t]he insured property was uninhabitable" as a result of the Closure Orders.[126] Muriel's relies on *In re Chinese Manufactured Drywall Products Liability Litigation* to argue that loss of use of the

---

[121] *Id.*

[122] Rec. Doc. 12-3 at 6. The Court finds that *Henderson Road Restaurant Systems, Inc. v. Zurich American Insurance Co.* is similarly distinguishable on this ground. Rec. Doc. 52. In *Henderson*, a district judge in the Northern District of Ohio found that Policy language covering "direct physical loss of or damage to property" covered alleged losses resulting from COVID-19-related shutdown orders. age to" property. 2021 WL 168422 at *11 (N.D. Ohio Jan. 19, 2021). The *Henderson* court relied on this language to distinguish the scope of coverage from other policies that provided coverage only for "physical loss to property." *Id.* at *10.

[123] *Studio 417*, 2020 WL 4692385, at *4.

[124] *Id.*

[125] Rec. Doc. 1-1 at 4; *see also* Rec. Doc. 27 at 21 ("Do Muriel's losses result from the existence of a virus on the property? No.").

[126] Rec. Doc. 27 at 12.

insured property constitutes a covered physical loss.[127] In *Chinese Drywall*, a federal district judge in the Eastern District of Louisiana found that the plaintiffs had suffered "direct physical loss" when Chinese-manufactured drywall rendered their homes "unusable and uninhabitable" due to "damage to the electrical wiring, appliances, and devices, as well as the ever-present sulfur gases."[128]

Muriel's also relies on *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Co.*, in which a federal district judge in the Eastern District of Virginia denied in part a motion to dismiss filed by State Farm and allowed claims that were allegedly "identical to those stated here by Muriel's" to proceed.[129] In *Elegant Massage*, the plaintiff operated a business providing therapeutic massages.[130] In response to the COVID-19 outbreak, the governor of Virginia issued an Executive Order mandating "the closure of 'recreational and entertainment businesses,' including 'spas' and 'massage parlors.'"[131] State Farm denied the plaintiff's claim for loss of business income and extra expense coverage.[132] The district court found that the plaintiff had "submitted a good faith claim to the Defendants for a 'direct physical loss' covered by the policy" because it was "plausible that Plaintiff's [sic] experienced a direct physical loss when the property was deemed uninhabitable, inaccessible, and dangerous to use by the Executive Orders . . . ."[133]

---

[127] *Id.* at 17 (citing *In re Chinese Manufactured Drywall Products Liability Litig.*, 759 F. Supp. 2d 822, 832 (E.D. La. 2010) (Fallon, J.)).

[128] 759 F. Supp. 2d at 832–34.

[129] Rec. Doc. 40; *see also Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-CV-265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020).

[130] *Id.* at *1.

[131] *Id.*

[132] *Id.* at *2.

[133] *Id.* at *10.

The instant case is distinguishable from the non-binding decisions in both *Chinese Drywall* and *Elegant Massage*. In this case, the Closure Orders did not render Muriel's "unusable and uninhabitable." Rather, the Closure Orders suspended restaurant dining operations but allowed restaurants—including Muriel's—to continue offering takeout and delivery services.[134] The Petition does not allege that Muriel's was "uninhabitable" by restaurant employees, delivery personnel, or even customers who could enter the restaurant to pick up takeout orders.[135] Moreover, when Muriel's filed the Petition, it was permitted to operate at 50% capacity pursuant to the City of New Orleans reopening plan.[136] Additionally, Muriel's does not allege that COVID-19 was physically present on the insured premises,[137] in contrast to the plaintiffs in *Chinese Drywall* who alleged that the drywall was physically present in their homes and was "releasing elemental sulfur gases throughout the homes."[138] Therefore, the Court finds *Chinese Drywall* and *Elegant Massage* inapposite here.

For these reasons, the Court finds that Muriel's does not sufficiently allege direct physical loss to the covered property.

**B.      Whether the Virus Exclusion Provision of the Policy Bars Coverage for Muriel's Alleged Losses**

---

[134] Rec. Doc. 1-1 at 16.

[135] *See generally id*; *see also, e.g. Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 CIV. 4612 (JPC), 2020 WL 7321405, at *12 (S.D.N.Y. Dec. 11, 2020) ("The fact that Sparks could have continued to operate its restaurant in some capacity is fatal to Sparks's claims for civil authority coverage."); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at *9 (S.D. Fla. Aug. 26, 2020) ("The government permitted Plaintiff to continue its takeout and delivery services. While Plaintiff never makes clear whether it undertook either of these options, the government never made the restaurant uninhabitable or substantially unusable.").

[136] Rec. Doc. 1-1 at 4.

[137] Rec. Doc. 27 at 21.

[138] *Chinese Drywall*, 759 F. Supp. 2d at 832.

In the instant motion, State Farm argues that the Virus Exclusion provision of the Policy bars insurance coverage for Muriel's alleged losses.[139] In opposition, Muriel's contends that the Virus Exclusion does not bar coverage because it only covers "viral contamination," which is distinct from the COVID-19 pandemic.[140] Muriel's also argues that COVID-19 is a pandemic and the Policy does not exclude coverage for "Pandemic Events."[141]

Because the Court finds that Muriel's does not adequately allege direct physical loss to the covered property, it need not determine whether the Virus Exclusion precludes coverage in this case. However, even if Muriel's had alleged direct physical loss to the covered premises, the Court finds that the plain language of the Virus Exclusion precludes Muriel's claim for coverage. The Virus Exclusion provision appears in the section of the Policy titled "Section I – Exclusions."[142] The section begins with an introductory anti-concurrent causation clause ("ACC Clause") that reads:

> 1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:[143]

The Policy then enumerates various exclusions, including the following Virus Exclusion:

> j. Fungi, Virus or Bacteria
> . . .
> (2) Virus, bacteria or other microorganism that induces or is capable of inducing

---

[139] Rec. Doc. 12-2 at 12–14.

[140] Rec. Doc. 27 at 19–20.

[141] *Id.* at 20–25.

[142] Rec. Doc. 12-3 at 7.

[143] *Id.*

physical distress, illness or disease; . . . .[144]

With regard to insurance policy coverage and exclusions, the Louisiana Supreme Court has stated, "[a]lthough the insured bears the burden of proving a policy of insurance affords coverage for an incident, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy."[145] "Policy exclusions must be clearly stated. Any ambiguity in an insurance policy's exclusions is construed to afford coverage."[146]

Here, the Court finds that the Virus Exclusion unambiguously excludes coverage for losses resulting from COVID-19. The Centers for Disease Control and Prevention ("CDC") defines COVID-19 as "a new virus . . . 'CO' stands for corona, 'VI' for virus, and 'D' for disease."[147] Therefore, COVID-19 falls squarely within the language of the Virus Exclusion. Notably, despite Muriel's assertion that the Virus Exclusion requires "viral contamination,"[148] the text of the Virus Exclusion includes nothing about a contamination requirement.[149]

The Court finds Muriel's multiple attempts to obfuscate the plain language of the Virus Exclusion unpersuasive. First, Muriel's contention that the cause of the alleged losses is the

---

[144] *Id.* at 8.

[145] *Jones v. Estate of Santiago*, 2003-1424, p. 12 (La. 4/14/04); 870 So. 2d 1002, 1010 (citing *Doerr v. Mobil Oil Corp.*, 2000-0947, p. 5 (La. 12/19/00); 774 So. 2d 119, 124, modified on other grounds on reh'g, 00-0947 (La. 3/16/01); 782 So. 2d 573)); *see also Blackburn v. Nat. Union Fire Ins. Co. of Pittsburgh*, 2000-2668, p. 6 (La. 4/3/01); 784 So. 2d 637, 641 ("The insurer bears the burden of proving the applicability of an exclusionary clause within a policy"); *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993) ("The insurer has the burden of proving that a loss comes within a policy exclusion"); Russ, 10A Couch on Ins. § 148:52 (3d ed. 2010).

[146] *La. Maint. Servs.*, 616 So. 2d at 1252; *see also Yount v. Maisano*, 627 So. 2d 148, 151 (La. 1993) ("Any ambiguity in an exclusion should be narrowly construed in favor of coverage").

[147] Centers for Disease Control and Prevention, *Frequently Asked Questions*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Basics (last visited Mar. 5, 2021).

[148] Rec. Doc. 27 at 20.

[149] Rec. Doc. 12-3 at 8.

Closure Orders, rather than the virus itself, flies in the face of the ACC Clause. In *Tuepker v. State Farm Fire & Casualty Co.*, the Fifth Circuit found an identical ACC Clause in an insurance policy issued by State Farm "unambiguous and enforceable."[150] The Fifth Circuit explained the meaning of the ACC Clause: "[E]xcluded losses—here, any loss which would not have occurred in the absence of one or more of the excluded events—will not be covered even if a nonexcluded event or peril acts 'concurrently or in any sequence' with the excluded event to cause the loss in question."[151] Similarly, in *Spector v. USAA Casualty Insurance Co.*, this Court addressed a nearly-identical ACC Clause in an insurance contract excluding coverage for flood damage.[152] There, the plaintiffs argued that damage caused by moisture and evaporation of floodwaters fell outside of the scope of the flood damage exclusion.[153] This Court disagreed, finding that damage caused by the moisture and evaporation of floodwaters was derivate of the flooding on the plaintiffs' property. As a result, this Court found that the flood damage exclusion precluded coverage under the insurance contract.[154]

Like in *Spector*, the Closure Orders issued by Mayor Cantrell and Governor Edwards are derivative of the COVID-19 outbreak.[155] Stated differently, the Closure Orders were issued either concurrently, or in sequence with, the spread of COVID-19 across the State of Louisiana.

---

[150] 507 F.3d 346, 355 (5th Cir. 2007) (applying Mississippi law).

[151] *Id.* at 354.

[152] No. CV 18-8806, 2019 WL 1493467, at *6 (E.D. La. Apr. 3, 2019) (Brown, C.J.).

[153] *Id.* at 3.

[154] *Id.* Notably, in *Elegant Massage*, the district court judge found that anti-concurrent causation clauses were "not a recognized or settled doctrine in the Court's jurisdiction." *Elegant Massage*, 2020 WL 7249624, at *11. By contrast, anti-concurrent causation clauses are clearly recognized by Louisiana law.

[155] Rec. Doc. 1-1 at 10 ("WHEREAS, the worldwide outbreak of COVID-1 9 and the effects of its extreme risk . . . ."); *Id.* at 13 ("WHEREAS, the United States has confirmed cases of individuals who have a severe acute respiratory disease ('COVID-19') caused by a novel coronavirus ('the virus') . . . .").

Therefore, the excluded event—COVID-19—remains part of the causal chain that resulted in Muriel's alleged losses and coverage is barred by the Virus Exclusion.

Second, the Court disagrees with Muriel's argument that because the Policy does not explicitly exclude "pandemics" or "communicable diseases," the Policy provides coverage for Muriel's alleged losses.[156] Although the exclusionary language could have been more clear, "[t]he fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous."[157]

Third, the Court declines to rewrite the unambiguous Virus Exclusion as a "Pollution/Contamination Exclusion," as urged by Muriel's.[158] In a somewhat convoluted argument, Muriel's contends that State Farm should be "equitably estopped" from arguing that the Virus Exclusion is not a "Pollution/Contamination Exclusion" because of representations made by "the industry" to the Louisiana Department of Insurance.[159] The Court will not examine extrinsic evidence of the Policy at issue here because the Virus Exclusion is unambiguous and Louisiana law does not permit the introduction of parol evidence under these circumstances.[160]

**C.     *Whether Muriel's has Alleged that the Civil Authority Provision of the Policy Provides Coverage for Muriel's Alleged Losses***

Muriel's alleges that it is entitled to coverage under the "Civil Authority" coverage

---

[156] Rec. Doc. 27 at 4.

[157] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 210. In addition, the Court is unpersuaded by Muriel's claim that a pandemic is "an event, like civil unrest, terrorism, or war." Rec. Doc. 27 at 21.

[158] *Id.* at 18.

[159] *Id.* at 26–27.

[160] La. Civ. Code Ann. art. 2046; *see also Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556, 563 (5th Cir. 2005) ("Louisiana law bars parol evidence to evaluate contractual intent '[w]hen the words of a contract are clear and explicit and lead to no absurd consequences.'").

provision that appears in the Endorsement to the Policy.[161] In the instant motion, State Farm argues that the Civil Authority provision is inapplicable to this case.[162] In opposition, Muriel's does not respond to State Farm's argument but states that Muriel's purchased extended coverage via the Endorsement "includ[ing] coverage for Civil Authority actions that deprive it of access to its business facility."[163]

The Civil Authority provision provides, in pertinent part:

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

1. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

2. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.[164]

Under Louisiana law, to prove coverage under the Civil Authority provision, the insured must establish a loss of business income:

(1) caused by an action of civil authority;
(2) the action of civil authority must prohibit access to the described premises of the insured;
(3) the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and
(4) the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy.[165]

---

[161] Rec. Doc. 1-1 at 3.

[162] Rec. Doc. 12-2 at 24.

[163] Rec. Doc. 27 at 8.

[164] Rec. Doc. 12-3 at 57.

[165] *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011) (citing *Kean, Miller,*

Importantly, coverage under the Civil Authority provision is circumscribed by the terms of the Endorsement, which provides: "The coverage provided by this endorsement is subject to the provisions of Section I – Property, except as provided below."[166] Therefore, the Court's previous findings—namely that Muriel's does not allege a direct physical loss and that the Virus Exclusion bars coverage for the alleged losses—also preclude coverage under the Civil Authority provision. Nevertheless, the Court alternatively finds that the Civil Authority coverage is inapplicable here.

In *Dickie Brennan & Co. v. Lexington Insurance Co.*, the Fifth Circuit, applying Louisiana law, explained that "[t]he general rule is that civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."[167] There, operators of New Orleans restaurant Brennan's brought suit against their insurer when the insurer denied coverage for losses incurred during a mandatory evacuation of New Orleans in anticipation of Hurricane Gustav.[168] The plaintiffs argued on appeal that the damage Hurricane Gustav caused in the Caribbean qualified as "damage to property, other than at the described premises" and was therefore sufficient to trigger coverage under the civil authority provision of the insurance policy.[169] The Fifth Circuit disagreed, holding that there was

---

*Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co.*, 2007 WL 2489711, at *3 (M.D. La. Aug. 29, 2007)).

[166] Rec. Doc. 12-3 at 56.

[167] 636 F.3d at 686–87 (internal quotation marks omitted).

[168] *Id.* at 684.

[169] *Id.*

no coverage under the civil authority provision of the policy because the plaintiffs "fail[ed] to demonstrate the required nexus between the evacuation order and damage to property 'other than at the described premises.'"[170]

Here, Muriel's allegations establish that the Closure Orders were intended to prevent the spread of COVID-19.[171] Like in *Dickie Brennan*, the Closure Orders were preventative and lack the requisite nexus with prior property damage. Moreover, Muriel's does not allege physical damage to other property in the proximity of the insured premises as is required to invoke coverage under the Civil Authority provision.

For these reasons, the Court finds that Muriel's fails to allege that it is entitled to coverage under the Civil Authority provision of the Endorsement to the Policy.

### D.       Whether Muriel's Declaratory Judgment Claim Should be Dismissed

State Farm argues that Muriel's claim for a judicial declaration as to its rights and State Farm's obligations under the Policy should be dismissed for the same reasons as the breach of contract claim, namely that "there is no coverage for the claimed losses."[172] Muriel's does not address this argument.[173]

If Muriel's breach of contract claim is dismissed, dismissal of the declaratory judgment claim is appropriate in this case. In the Petition, Muriel's seeks a judicial declaration as to its rights and State Farm's obligations under the Policy "stating the actions and orders of the State of Louisiana and/or City of New Orleans, Parish of Orleans have rendered the Covered Property

---

[170] *Id.* at 684–87.

[171] Rec. Doc. 1-1 at 4.

[172] Rec. Doc. 12-2 at 30.

[173] *See* Rec. Doc. 27.

unfunctional and therefore constitute and/or have caused a direct physical loss that triggers and affords civil authority coverage under the policy."[174] For the reasons explained above, the Court finds that Muriel's fails to adequately state a claim for coverage under the Civil Authority provision of the Policy.

### V. Conclusion

Considering the foregoing reasons, the Court finds that Muriel's has not set forth sufficient allegations to state a claim for insurance coverage under the Policy for losses resulting from the COVID-19 Closure Orders. Nevertheless, cognizant of the economic hardships resulting from the COVID-19 virus and its ongoing effects, the Court grants Plaintiff leave to amend the Complaint to address the deficiencies identified in this Order. State Farm is granted leave to file responsive motions to Plaintiff's amended complaint if necessary. Accordingly,

**IT IS HEREBY ORDERED** that Defendant State Farm Fire and Casualty Company's "Rule 12(b)(6) Motion to Dismiss Plaintiff's Petition for Failure to State a Claim"[175] is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Muriel's is granted leave to amend the Complaint to address the deficiencies identified in this Order by May 10, 2021.

---

[174] *Id.* at 8.

[175] Rec. Doc. 12.

**IT IS FURTHER ORDERED** that State Farm is granted leave to file responsive motions to Muriel's amended complaint if necessary.

**NEW ORLEANS, LOUISIANA,** this __26th__ day of April, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

29