UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MURIEL'S NEW ORLEANS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2295** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **SECTION: "G"** |

### ORDER AND REASONS

This litigation concerns a denial of insurance coverage for damages allegedly arising from the COVID-19 pandemic. Pending before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") "Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim."[1] Plaintiff Muriel's New Orleans, LLC ("Muriel's") opposes the motion.[2] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion and dismisses Plaintiff's First Amended Complaint with prejudice.

### I. Background

*A.     Factual Background*

Muriel's alleges that it entered into an "all risk" insurance contract with State Farm to cover losses at its restaurant, Muriel's Jackson Square, in New Orleans, Louisiana (the "Policy").[3] According to Muriel's, the Policy was in "full effect, providing property, business personal

---

[1] Rec. Doc. 69.

[2] Rec. Doc. 70.

[3] Rec. Doc. 66 at 4.

1

property, business income, and extra expense, and additional coverages for the insured premises between the period of June 19, 2019 through June 19, 2020."[4] During this time, Muriel's allegedly "faithfully paid policy premiums" to State Farm.[5] Muriel's alleges that under the Policy, insurance coverage extends to "the actual loss of business income sustained and necessary extra expenses incurred when access to the insured premises is specifically prohibited by governmental decision, action or order" (the "Civil Authority" provision).[6]

In March and April 2020, in response to the COVID-19 pandemic, Louisiana Governor John Bel Edwards and New Orleans Mayor LaToya Cantrell issued a series of orders and emergency proclamations restricting public gatherings and limiting restaurant operations (the "Closure Orders").[7] Muriel's alleges that it suffered "tremendous financial damage" due to the lost "functionality and use of its physical property" as a result of the Closure Orders.[8] Muriel's contends that "this loss of use is a direct physical loss under the Policy."[9] Muriel's also claims that its alleged losses are covered under the Policy's Civil Authority provision.[10]

Muriel's alleges that State Farm nevertheless denied coverage, claiming that Muriel's: (1) had not suffered physical loss or damage, and (2) was precluded from coverage due to the "virus exclusion" in the Policy.[11] Muriel's asserts that State Farm's denial of coverage represents a

---

[4] *Id.* at 6.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 7–8.

[8] *Id.* at 8–9.

[9] *Id.* at 5–9 (citing *Studio 417, Inc. v. The Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Miss. 2020)).

[10] *Id.* at 6, 9.

[11] *Id.* at 9 (internal quotations omitted).

breach of contract resulting in "significant damages."[12]

In addition to the breach of contract claim, Muriel's asserts that State Farm committed fraud when it "told the Louisiana Department of Insurance it wanted to have the word 'virus' added as part of its contamination exclusion without an express pandemic exclusion."[13]

### B. Procedural Background

On June 22, 2020, Muriel's filed a petition in the Civil District Court for the Parish of Orleans, State of Louisiana.[14] State Farm removed the case to this Court on August 19, 2020, asserting diversity jurisdiction pursuant to Title 28, United States Code, Section 1332.[15] On September 11, 2020, Muriel's filed a motion to remand the case to state court.[16] The Court denied the motion to remand on November 18, 2020.[17]

On September 16, 2020, State Farm filed a motion to dismiss.[18] This Court denied that motion, finding that Muriel's failed to state a claim that was covered by the Policy.[19] The Court granted Muriel's leave to amend its complaint to address the deficiencies identified in the Court's Order.[20]

---

[12] *Id.* at 15–16.

[13] *Id.* at 16.

[14] Rec. Doc. 1-1.

[15] Rec. Doc. 1.

[16] Rec. Doc. 9.

[17] Rec. Doc. 30.

[18] Rec. Doc. 12.

[19] Rec. Doc. 58 at 20–29.

[20] *Id.* at 28–29.

On May 10, 2021, Muriel's filed an Amended Complaint.[21] In response, on June 14, 2021, State Farm filed the instant motion to dismiss Muriel's Amended Complaint.[22] On July 2, 2021, Muriel's filed its opposition.[23] On July 15, 2021, with leave of Court, State Farm filed its reply memorandum in further support of the instant motion to dismiss.[24]

## II. Parties' Arguments

### A.  *State Farm's Arguments in Support of the Motion to Dismiss*

State Farm moves the Court to dismiss Muriel's breach of contract and fraud claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court summarizes State Farm's arguments with respect to each claim.

### 1.  **State Farm asserts that Muriel's breach of contract claim should be dismissed**

State Farm argues that the Amended Complaint "has failed to correct the deficiencies" identified in this Court's April 26, 2021 Order and thus its breach of contract claim should be dismissed.[25] First, State Farm argues that the Policy's "Virus Exclusion unambiguously excludes coverage for losses resulting from COVID-19."[26] State Farm asserts that "Louisiana federal courts have uniformly rejected" COVID-19 related insurance claims for failure to demonstrate direct, physical loss.[27] Moreover, State Farm avers that "federal district courts in Texas, Michigan, California, Florida, and Pennsylvania" have rejected claims for business interruption

---

[21] Rec. Doc. 66.

[22] Rec. Doc. 69.

[23] Rec. Doc. 70.

[24] Rec. Docs. 72, 73.

[25] Rec. Doc. 69 at 1; 69-1 at 7–8.

[26] Rec. Doc. 69-1 at 7 (quoting Rec. Doc. 65 at 22).

[27] *Id.* at 7–8.

4

losses stemming from COVID-19 Closure Orders, reasoning that the suspension of business operations do not constitute "direct physical loss."[28]

According to State Farm, to trigger coverage under the Policy, Muriel's must demonstrate "direct physical loss."[29] State Farm argues that Muriel's fails to allege "any tangible physical damage."[30] State Farm asserts that the Closure Orders do not constitute "accidental direct physical loss," because the orders were designed "to keep people away from each other, not away from damaged property."[31] Instead, State Farm avers that the Policy's "Virus Exclusion" "unambiguously excludes coverage" for losses that occur as the result of a virus.[32] Therefore, State Farm contends that Muriel's fails to state a claim on which relief may be granted.

### 2. State Farm asserts that Muriel's fraud claim should be dismissed

State Farm argues that Muriel's fraud claim should be dismissed.[33] In support, State Farm contends that allegations of fraud must be made with particularity, and that Muriel's has failed to do so.[34] Specifically, State Farm asserts that Muriel's has failed to plead facts demonstrating it relied on any alleged misrepresentation by State Farm to the Louisiana Department of Insurance

---

[28] *Id.* at 8–9 (citing *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353 (W.D. Tex. 2020); *Turek Enterps., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp 3d 492 (E.D. Mich. 2020); *Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co.*, 2020 WL 7696080, at *3–4 (N.D. Cal. Dec. 28, 2020); *HealthNOW Med. Ctr., Inc. v. State Farm Gen. Ins. Co.*, 2020 WL 7260055, at *2 (N.D. Cal. Dec. 10, 2020); *Royal Palm Optical, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 1220750, at *5 (S.D. Fla. Mar. 29, 2021); *Mareik, Inc. v. State Farm Fire & Cas. Co.*, 2021 WL 1940647, at *3-6 (E.D. Pa. May 5, 2021)).

[29] *Id.* at 17–18.

[30] *Id.* at 18.

[31] *Id.* at 19–21.

[32] *Id.* at 13–20.

[33] *Id.* at 21.

[34] *Id.* at 21–22.

5

(the "LDI").[35] State Farm notes that the alleged misrepresentations were not made to Muriel's, but rather to the LDI.[36] State Farm asserts that Muriel's did not allege that it had any knowledge of State Farm's statements to the LDI.[37] Moreover, State Farm asserts that the LDI filings attached to the Amended Complaint were not "prepared or submitted by State Farm, nor do they make any reference to State Farm."[38] Rather, State Farm notes that these statements "were submitted by the Property Insurance Association of Louisiana ('PIAL')." State Farm avers that there is no legal authority for holding an insurer liable for statements made by the PIAL and that Muriel's "provide[d] no facts indicating that PIAL is State Farm's representative."[39] Additionally, State Farm argues that Muriel's "'formulaic recitation' of reliance is not sufficient to survive a motion to dismiss."[40] Thus, State Farm argues these "allegations do not state a cause of action for fraud."[41]

Next, State Farm argues that Muriel's fraud claim is an "attempt[] to repackage its equitable estoppel claims as fraud claims."[42] State Farm asserts that Muriel's "goal" is to have State Farm "equitably estopped from enforcing the Virus Exclusion because of representations that were made to the LDI about the effect of the Virus Exclusion on insurance premiums."[43]

---

[35] *Id.* at 22.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 22–23.

[40] *Id.* at 22 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[41] *Id.* at 23.

[42] *Id.*

[43] *Id.*

6

State Farm urges the Court to resist Muriel's call to "rewrite[]" the Virus Exclusion as a contamination exclusion, noting that the Court "emphatically rejected" that argument in its April 26, 2021 Order.[44]

State Farm argues that the statutes governing the contents of filings with the LDI do not create a "[private] cause of action for damages based on representations to the LDI."[45] Instead, State Farm asserts that the "Insurance Commissioner is exclusively charged with enforcement of the Insurance Code."[46] Thus, State Farm argues that, even if the statements to the LDI contained misrepresentations, Louisiana law provides no cause of action to Muriel's.[47]

### 3. State Farm asserts that Muriel's alternative theories do not show that there is coverage under the Policy

Next, State Farm asserts that Muriel's alternative coverage theories are inapplicable.[48] As to the Civil Authority provision of the Policy, State Farm argues that Muriel's "has not pled facts necessary to trigger this provision," because the Civil Authority provision "provides coverage for loss of income caused where damage to other *property* caused by a *covered risk* causes a civil authority to prohibit access to the insured property, causing loss of income to the insured."[49] Here, State Farm asserts that "[c]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct

---

[44] *Id.*

[45] *Id.* at 23–24.

[46] *Id.* at 24 (citing La. R.S. 22:1474; *Emps.-Com. Union Ins. Co. v. Bernard*, 303 So. 2d 728, 731 (La. 1974)).

[47] *Id.* at 24–25.

[48] *Id.* at 25.

[49] *Id.* (emphasis in original).

result of physical damage to other premises in the proximity of the insured's property."[50] State Farm asserts that Muriel's does not allege damage to a nearby property.[51] Further, State Farm avers that Muriel's "must also plead a prohibition on access to its property."[52] State Farm asserts that the [Closure Orders] at issue here expressly permit access" because they allow for take-out or delivery services to continue.[53] State Farm contends that Muriel's "fails to plead the requisite causal link between actual damage to nearby premises and the prohibition on access."[54] Further, State Farm asserts that a causal relationship is absent when civil action is taken to prevent future harm, rather than prior physical damage.[55] Lastly, State Farm avers that Civil Authority coverage requires a prohibition on access to the area immediately surrounding the damaged property.[56] State Farm asserts that Muriel's has not, and cannot, allege these requirements are met.[57]

As to Muriel's "Loss of Income" and "Extra Expense" theories of coverage, State Farm asserts Muriel's has also failed to allege facts triggering these provisions.[58] First, State Farm asserts that coverage under these provisions requires "accidental direct physical loss," which State Farm argues Muriel's cannot show.[59] Additionally, these provisions require that the loss must be

---

[50] *Id.* (quoting *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686–87 (5th Cir. 2011)).

[51] *Id.* at 26.

[52] *Id.* at 27.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at 28.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 18–19, 28. *See supra* notes 25–32 and accompanying text.

caused by a loss that is covered under the Policy.[60] State Farm asserts that coverage is unambiguously excluded under the Policy's Virus Exclusion.[61] State Farm asserts that Loss of Income and Extra Expense coverage applies to losses during a "period of restoration" during which the covered property is being repaired or rebuilt.[62] State Farm avers that Muriel's does not allege any facts meeting the "period of restoration" requirement.[63]

Finally, State Farm argues that three additional policy exclusions bar Muriel's claims: (1) the "Ordinance or Law" provision bars coverage for any losses due to the "enforcement of any ordinance or law;" (2) the "Acts or Decisions" provision bars coverage for any losses caused by "[c]onduct, acts or decisions . . . of any person, group, organization, or governmental authority;" and (3) the "Consequential Loss" provision bars coverage for any losses caused by "[d]elay, loss of use or loss of market."[64]

### B. Muriel's Arguments in Opposition to the Motion to Dismiss

In opposition, Muriel's notes that the *Twombly* pleading standard "is a relatively low bar[,] . . . [requiring that a] claim that is legally and factually plausible should survive to see development through discovery."[65] Muriel's contends its claims are legally plausible and "Muriel's reasserts its argument that 'accidental physical loss' should include deprivation of use of the insured property separate and apart from damage to the physical structure itself."[66] Muriel's

---

[60] Rec. Doc. 69 at 28.

[61] *Id.* at 28–29.

[62] *Id.* at 29.

[63] *Id.*

[64] *Id.* at 29–31.

[65] Rec. Doc. 70 at 3.

[66] *Id.*

argues that the "conflicting outcome" of recent Court decisions interpreting "the undefined terms accidental, physical[,] and loss" demonstrate that the terms are ambiguous and require broad interpretation.[67] To resolve this ambiguity, "Muriel's requests that the Court certify this critical question to the Louisiana Supreme Court."[68]

Next, Muriel's "reasserts its legal arguments previously submitted," directing the Court's attention to its opposition to State Farm's first motion to dismiss.[69] Muriel's adds that it "amended its complaint to add specific allegations regarding State Farm's admission that its virus exclusion was a contamination exclusion" but Muriel's concedes this "Court has determined [it] . . . is not a contamination exclusion."[70] However, "Muriel's maintains that a virus exclusion cannot unambiguously be a contamination exclusion to its drafter and regulatory authorities, and simultaneously apply without a contamination event to bar a policyholder's claim."[71] Muriel's concludes by noting that "[this] Court has rejected this argument as implausible and Muriel's has nothing new to offer to alter the Court's analysis."[72]

C.  ***State Farm's Arguments in Further Support of the Motion to Dismiss***

In reply, State Farm notes that Muriel's opposition to the instant motion "largely reiterates arguments that the Court already addressed and rejected."[73] State Farm asserts that Muriel's "fail[ed] to address the Louisiana federal district court opinions issued since State Farm filed its

---

[67] *Id.*

[68] *Id.*

[69] *Id.* at 4 (citing Rec. Doc. 27).

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] Rec. Doc. 73 at 4.

motion" that reject claims similar to Muriel's.[74] Finally, State Farm asserts that Muriel's request that this Court certify a question to the Louisiana Supreme Court is improper because Louisiana Supreme Court Rule XII "does not authorize federal district courts to certify issues to [the Louisiana Supreme Court]."[75] For these reasons, State Farm contends that Muriel's claims should be dismissed.[76]

### III. Legal Standards

#### A.  *Legal Standard for Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[77] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[78] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[79] "Factual allegations must be enough to raise a right to relief above the speculative level."[80] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct

---

[74] *Id.* (discussing *Coleman A. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, 2021 WL 2476867 (E.D. La. June 17, 2021) (Barbier, J.); *Pierre v. Transp. Ins. Co.*, 2021 WL 2754651 (W.D. La. July 1, 2021); *Laser & Surgery Ctr. of Acadiana LLC v. Ohio Cas. Ins. Co.*, 2021 WL 2702123 (W.D. La. June 14, 2021) *report and recommendation adopted*, 2021 WL 2697990 (W.D. La. June 30, 2021)).

[75] *Id.* at 5 (citing La. Sup. Ct. R. XIII).

[76] *Id.*

[77] Fed. R. Civ. P. 12(b)(6).

[78] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[79] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[80] *Twombly*, 550 U.S. at 556.

alleged."[81]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[82] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[83] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[84] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[85]

The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[86] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[87] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[88] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[89]

---

[81] *Id.* at 570.

[82] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[83] *Iqbal*, 556 U.S. at 677–78.

[84] *Id.* at 679.

[85] *Id.* at 678.

[86] *Id.*

[87] *Id.*

[88] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[89] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at *2 (E.D. La. Apr. 8, 2010)

### B. Legal Standard for Interpreting Insurance Contracts Under Louisiana Law

Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[90] "The Louisiana Civil Code provides that '[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract' by construing words and phrases 'using their plain, ordinary and generally prevailing meaning.'"[91] "Interpretation of an insurance contract generally involves a question of law."[92]

If the contract is clear and unambiguous and does not have absurd consequences, the court applies the ordinary meaning of the contractual language.[93] If the insurance policy contains ambiguous provisions, the "[a]mbiguity . . . must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions."[94] "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions

---

(Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

[90] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 3 (La. 6/27/03); 848 So. 2d 577, 580); *Mark v. Sunshine Plaza, Inc.*, No. 16-455, 2016 WL 6876645, at *2 (E.D. La. Nov. 22, 2016) (Morgan, J.) (quoting *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) (quoting *Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003-1801, p. 3 (La. 2/25/04); 869 So. 2d 96, 99)) (quotation marks omitted) (alterations omitted).

[91] *Wisznia Co.*, 759 F.3d at 448–49 (quoting *Mayo,* 2003–1801 at p. 3; 869 So.2d at 99 (citing La. Civ. Code arts. 2045, 2047)).

[92] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (citing *Bonin v. Westport Ins. Corp.*, 2005-0886, p. 4 (La. 5/17/06); 930 So. 2d 906, 910).

[93] *Prejean v. Guillory*, 2010-0740, p. 6 (La. 7/2/10); 38 So. 3d 274, 279; *see also Sapp v. Wood Grp. PSN, Inc.*, No. 15-3, 2016 WL 6995897, at *4 (E.D. La. Nov. 30, 2016) (Brown, J.).

[94] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 207 (quoting *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)).

beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."[95] "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."[96]

## IV. Analysis

In the Amended Complaint, Muriel's asserts breach of contract and fraud claims against State Farm.[97] Specifically, Muriel's alleges that State Farm breached its insurance contract with Muriel's by denying coverage for losses Muriel's sustained as a result of the COVID-19 Closure Orders.[98] In the instant motion, State Farm argues that Muriel's breach of contract claim should be dismissed for three reasons: (1) the Amended Complaint does not allege direct physical loss to the covered property as required by the Policy; (2) the Policy's Virus Exclusion bars coverage for the alleged losses; and (3) the Civil Authority provision of the Endorsement to the Policy does not apply to Muriel's alleged losses.[99] As to Muriel's fraud claim, State Farm argues that it should be dismissed because Muriel's fails to plead specific facts upon which a claim for relief could be granted. The Court addresses each claim in turn. In its analysis, the Court applies Louisiana law as required by *Erie/Klaxon* doctrine.[100]

---

[95] *Id.* at 208 (quoting *Cadwallader*, 2002-1637 at p.3; 848 So. 2d at 580).

[96] *Id.*

[97] Rec. Doc. 1-1.

[98] *Id.*

[99] *See generally* Rec. Doc. 12-2.

[100] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Sorrels Steel Co. v. Great Sw. Corp.*, 906 F.2d 158, 167 (5th Cir 1990) ("A federal court sitting in diversity follows the choice of law rules of the state in which it sits."). "Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract." *Woodfield v. Bowman,* 193 F.3d 354, 360 (5th Cir. 1999). Here, the Policy was issued and executed in Louisiana. Rec. Doc. 12-3 at 93. In addition, the parties agree that Louisiana law governs the instant dispute. Rec. Doc. 12-2 at 4; Rec. Doc. 27 at 11.

### A. Whether Muriel's Breach of Contract Claim Should Be Dismissed

Muriel's alleges that the Closure Orders and their effects on Muriel's business, property, and operations constitute a "direct physical loss" under the terms of the Policy.[101] In the instant motion to dismiss, State Farm argues that Muriel's allegations are "insufficient to establish the required 'accidental direct physical loss to' Covered Property."[102] In opposition, Muriel's reasserts the argument raised in opposition to the first Motion to Dismiss that the alleged losses are covered by the Policy because the Policy covers "losses" as opposed to "damages."[103]

Given that Muriel's advances no new arguments, for the reasons stated in this Court's April 26, 2021 Order, the Court finds that Muriel's has not demonstrated the "direct physical loss" required to trigger coverage under the Policy.[104] The Policy states, in pertinent part:

> We insure for accidental *direct physical loss* to Covered Property unless the loss is:
> 1. Excluded in SECTION I — EXCLUSIONS; or
> 2. Limited in the Property Subject To Limitations provision.[105]

The Policy does not define "direct physical loss." However, courts within the Fifth Circuit have consistently held that a requirement of "physical loss" excludes coverage for losses that are intangible and incorporeal.[106] In the Amended Complaint, Muriel's does not allege any physical

---

[101] Rec. Doc. 66 at 8.

[102] Rec. Doc. 69-1 at 12–18.

[103] Rec. Doc. 70 at 3; *see also* Rec. Doc. 27 at 11–15.

[104] *See* Rec. Doc. 65 at 16–20.

[105] Rec. Doc. 12-3 at 6 (emphasis added).

[106] *See, e.g.*, *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990) (reasoning that "the language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper"); *Hartford Ins. Co. of Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (internal citations omitted) (reasoning that "[t]he requirement that the loss be 'physical,' given the ordinary definition of that

loss that manifested as a demonstrable physical alteration of the premises.[107] Instead, Muriel's continues to rely on *Studio 417, Inc. v. The Cincinnati Insurance Co.*, a case decided by a district judge in the Western District of Missouri, to argue that "direct physical loss" does not require physical tangible alteration.[108] As this Court explained, "*Studio 417* is easily distinguished from this case."[109] In that case,

> the insurance policy at issue provided coverage for 'accidental physical loss *or* accidental physical damage.' The *Studio 417* court applied the statutory interpretation canon against superfluity to give distinct meanings to 'physical loss' and 'physical damage.' Here, the Policy provides coverage only for 'physical loss,' thereby rendering the statutory canon against superfluity inapplicable.[110]

Moreover, in *Studio 417*, unlike here, the plaintiffs alleged that COVID-19's physical presence on the premises deprived plaintiffs of the use of their property.[111] In the Amended Complaint, Muriel's explicitly pleads that it "never found any evidence of the COVID-19 virus on its property."[112] Thus, the Court finds *Studio 417* inapposite.

Furthermore, since this Court's April 26, 2021 Order denying State Farm's first motion to dismiss, other district courts have ruled that the COVID-19 pandemic has not caused the kind of direct physical loss required to trigger business interruption coverage.[113] Although these cases are

---

term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property"). *See also Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-461, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) ("It appears that within our Circuit, the loss needs to have been a distinct, demonstrable physical alteration of the property.") (internal quotation omitted).

[107] *See* Rec. Doc. 66.

[108] *Id.* at 5–6. *See Studio 417, Inc. v. The Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020).

[109] Rec. Doc. 65 at 17–18.

[110] *Id.* (emphasis in original).

[111] *Id.* at 18.

[112] Rec. Doc. 66 at 8.

[113] *See, e.g.*, *Pierre v. Transp. Ins. Co.*, No. 20-1660, 2021 WL 2754651, at *1 (W.D. La. July 1, 2021)

not binding, the substantial agreement among these courts is persuasive. Accordingly, given that Muriel's advances no new argument or authority,[114] the Court finds that Muriel's has not sufficiently alleged direct physical loss to the covered property.

As to Muriel's alternate theories of coverage under the Civil Authority, Loss of Income, and Extra Expense provisions, State Farm argues these provisions are inapplicable because Muriel's has not alleged a causal link to a "Covered Cause Of Loss."[115] Muriel's does not respond to these arguments.[116] For the reasons explained in this Court's prior Order, the Court finds these provisions inapplicable.[117]

Finally, in its opposition, Muriel's requests the Court certify the question of whether the undefined terms "accidental, physical[,] and loss" are ambiguous to the Louisiana Supreme Court.[118] State Farm asserts that Louisiana Supreme Court Rule XII does not authorize a federal

---

("[T]here is a universe of Louisiana jurisprudence concerning pandemic-related business interruption claims wherein the courts have held that COVID-19 pandemic does not cause direct physical loss of or damage to property."); *Coleman A. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, 2021 WL 2476867, at *2 (E.D. La. June 17, 2021) (Barbier, J.) (finding that federal and state courts in Louisiana "have . . . consistently held that closures mandated by civil authorities due to the COVID-19 pandemic did not cause direct physical loss or damage because their injury is purely economic in nature"); *Laser & Surgery Ctr. of Acadiana LLC v. Ohio Cas. Ins. Co.*, No. 21-1236, 2021 WL 2702123, at *3 (W.D. La. June 14, 2021), *report and recommendation adopted*, No. 21-1236, 2021 WL 2697990 (W.D. La. June 30, 2021) ("This Court agrees with the foregoing line of cases that the presence of the virus does not constitute physical loss or damage sufficient to trigger coverage."); *Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins. Co.*, No. 21-317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021) ("[E]very district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement.") In fact, this Court cannot find a single case from within the Fifth Circuit in which a court held differently. *See, e.g.*, *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 20-1348, 2021 WL 2936066, at *6 (N.D. Tex. July 13, 2021) ("Even if Vandelay has sufficiently alleged that COVID-19 was present in its restaurants, it has not adequately alleged that COVID-19 caused physical damage or loss.").

[114] *See generally* Rec. Doc. 70.

[115] Rec. Doc. 69 at 25–29.

[116] *See generally* Rec. Doc. 70.

[117] Rec. Doc. 65 at 24–27.

[118] *Id.* at 3. Muriel's directs the Court to Rule XIII. *Id.* However, Rule XIII concerns substitution of parties. *See* La. Sup. Ct. R. XIII. The Court will address Rule XII, which addresses certified questions from federal courts. *See* La. Sup. Ct. R. XII.

district court to certify a question to the Louisiana Supreme Court.[119] Rule XII of the Rules of the Supreme Court of Louisiana allows a federal court to certify an open question of state law to the Louisiana Supreme Court for determination.[120] The rule expressly provides that "[t]he provisions of this rule may be invoked by the Supreme Court of the United States or any circuit court of appeal of the United States."[121] Therefore, this Court lacks the authority to certify a question to the Louisiana Supreme Court. Accordingly, the Court will decline Muriel's request.

### B. Whether Muriel's Fraud Claim Should Be Dismissed

In the instant motion, State Farm argues that Muriel's fails to plead the elements of fraud with particularity, and, thus, its fraud claim should be dismissed.[122] Muriel's does not address this argument.[123] Under Louisiana law, to state a claim for fraudulent misrepresentation, a plaintiff must show "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury."[124] Here, the Court finds that Muriel's has failed to state a claim for fraud. The LDI filings that Muriel's attaches to the Amended Complaint make no reference to State Farm.[125] Instead, the filings are on behalf of the Property Insurance Association of Louisiana.[126] The Amended Complaint does not assert that the PIAL has any

---

[119] Rec. Doc. 73 at 5.

[120] La. Sup. Ct. R. XII.

[121] *Id.* § 2.

[122] Rec. Doc. 69 at 15–19.

[123] Rec. Doc. 70.

[124] *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Assocs., Inc.*, 2006-0974, p. 3 (La. App. 4 Cir. 6/20/07); 962 So. 2d 1089, 1091 (quoting *Goodman v. Dell Publ'g Co.*, 1995 WL 428602, at *3 (E.D. La. 1995)).

[125] Rec. Doc. 66-1 at 4–6.

[126] *Id.*

relationship with State Farm, or that these statements were made on State Farm's behalf.[127] Therefore, the Court finds that Muriel's has failed to show that State Farm made any misrepresentation.

Moreover, the Amended Complaint recites, without further support, that "Muriel's relied on the misrepresentation when entering the insurance contract."[128] However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice to survive a motion to dismiss.[129] Without facts that demonstrate Muriel's reliance on the alleged misrepresentations, the Court finds the Amended Complaint fails to state a claim for fraud upon which relief can be granted.

## V. Conclusion

Considering the foregoing reasons, the Court finds that Muriel's has not set forth sufficient allegations to state a claim for breach of contract or fraud. Accordingly,

**IT IS HEREBY ORDERED** that Defendant State Farm Fire and Casualty Company's "Rule 12(b)(6) Motion to Dismiss Plaintiff's Petition for Failure to State a Claim"[130] is **GRANTED**.

---

[127] *See generally* Rec. Doc. 66.

[128] *Id.* at 15.

[129] *Iqbal*, 556 U.S. at 678.

[130] Rec. Doc. 69.

**IT IS FURTHER ORDERED** that Muriel's Amended Complaint is **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA,** this   21st   day of September, 2021.

                                                      **NANNETTE JOLIVETTE BROWN**
                                                      **CHIEF JUDGE**
                                                      **UNITED STATES DISTRICT COURT**